IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER,

                     Plaintiff,                  Case No. 3:03 CV 1570

-vs-

                                        MEMORANDUM OPINION

CHARLES EBERLE,

                     Defendant.

KATZ, J.

## INTRODUCTION

Plaintiff William T. Wuliger ("Wuliger") commenced this action against Defendant for recovery of commissions in connection with the sale of viatical investment. This case is an outgrowth of the *Liberte v. Capwill*[1] litigation which has spawned related litigation both in the state and federal courts. The essence of this action contends that Defendant Charles Eberle ("Eberle") entered into an agent sales agreement whereby he solicited individuals to invest in viatical settlements offered by Alpha Capital Group ("Alpha"). In return, Eberle is alleged to have received approximately $19,682.88 in commissions.

---

[1] *Liberte v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio) revolves around the viatical settlement industry. Plaintiff Liberte Capital LLC ("Liberte") and Intervening Plaintiffs Alpha Capital Group LLC and Integrity Management Partners, LLC (collectively "Alpha") were engaged in the business of purchasing insurance policies from terminally ill policyholders willing to sell their rights to the policies. Liberte also solicitied investors for policies on the lives of seniors witout terminal illness. Investors were solicited by Liberte and Alpha to purchase viatical life insurance investment programs whereby investors were matched in many cases with the policy on the terminally ill person or "viator".

Wuliger was appointed Receiver of Alpha in the fall of 2001. Thereafter, he was authorized by the Court in the *Liberte* action, in part, to:

> [U]se his best judgment to protect the rights of Alpha investors and to discharge his duties in a manner calculated to preserve the greatest monetary recovery for the maximum number of all Alpha investors.

(*Liberte*, Doc. No. 1290.) One year later those responsibilities included the right to pursue actions against Liberte and Alpha agents and brokers. (*Liberte*, Doc. No. 1758.) More recently, the Court clarified the expanded role of both the General and Alpha Receivers, stating that:

> [I]n keeping with the ultimate goal of maximizing the estates for the benefit of the investors, [the Receivers] are empowered to represent and pursue the interests of the investors directly. The Receivers shall further continue to carry out their duties and obligations as set forth by previous and existing Order of the Court. Finally, the Receivers shall continue to coordinate their efforts with class counsel to recover, protect and preserve receivership assets.

(Doc. No. 1982.)

Wuliger initiated this suit in July 2003 against Eberle alleging the following claims: (1) violations of the 1933 Securities Act, 15 U.S.C. § 77; (2) violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78 j; (3) common law fraud; (4) fraud in the inducement; (5) breach of contract; (6) unjust enrichment; (7) civil conversion; (8) breach of fiduciary duty and duty to act in good faith; (9) intentional or negligent misrepresentation; and (10) violations of § 215 of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-3, 80b-4, 80b-6, and 80b-15.

This matter comes before the Court on Plaintiff's motion for summary judgment, Defendant's opposition, and Plaintiff's reply thereto. Also before the Court is Defendant's motion to strike the Hale affidavit including Plaintiff's opposition thereto. Finally, Plaintiff moves for a ruling on his dispositive motion as settlement has not been successful.

For the reasons stated below, Plaintiff's motion for summary judgment is denied and Defendant's motion to strike is granted in part and denied in part. Finally, Plaintiff's motion for a ruling is denied as moot.

### **DEFENDANT'S MOTION TO STRIKE AFFIDAVIT**

Federal Rule of Civil Procedure 56(e) sets forth three mandatory requirements for affidavits that are used in support of, or in opposition to, a motion for summary judgment. The rule requires that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). "'An affidavit that does not satisfy the requirements of Rule 56(e) is subject to a motion to strike.'" *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 954 (S.D. Ohio 2001) (quoting *Collazos-Cruz v. United States*, No. 96-5452, 1997 U.S. App. LEXIS 17196, 1997 WL 377037, at *2 (6th Cir. July 3, 1997)).

The Defendant challenges portions of Virginia Hale's affidavit as those portions do not comply with being made upon personal knowledge. The challenged paragraphs are as follows:

> 58) I am aware of no calls of inquiry from the investors of Charles Eberle concerning the safety of their investments in Alpha Capital viaticals and I therefore *presume* that the investors who purchased interests in Alpha Capital viaticals from Charles Eberle relied solely on the representations of Charles Eberle in deciding to purchase an interest in Alpha Capital viatical.

> 61) I am aware that Alpha Capital Group, Liberte Capital Group and VES had informed their agents, through seminars that there is zero risk to principal and it is *presumptively true* that Charles Eberle asserted to prospective investors that investment in viaticals was a safe, secure instrument that would yield substantial profits with minimal risk. I am aware of no instance Charles Eberle had contacted VES to obtain more specific information as to the risks attendant to investment of capital in Alpha Capital viaticals.

> 64) The manner in which the marketing of Liberte Capital and Alpha Capital viaticals was to be done required arm's length transactions between agents

and their clients, prospective investors in interests of Alpha Capital viaticals. It is *presumptively true* that Charles Eberle sold interests in Alpha Capital viaticals through direct contact with prospective investors.

      65) Based on the procedures then in place for informing Liberte Capital agents and Alpha Capital agents of the nature of viaticals and the benefits to be derived in investing in Liberte Capital or Alpha Capital viaticals, *it is my belief* that Charles Eberle did not inform prospective investors of substantial risks associated with investment in Alpha Capital viaticals, as he did not have prior experience selling these types of investment instruments and neither Alpha Capital nor Viatical Escrow Services informed the agents as to specific risks involved in the investment in viaticals. . .

      66) To the best of *my knowledge and belief*, Charles Eberle failed to inform prospective investors of the rate of his commission as applied to the sales of interests in viaticals that he made to investors whom he solicited and he also failed to state to the investors whom Eberle solicited whether there were any other costs associated with the sale of viaticals.

      67) To the best of *my knowledge and belief*, Charles Eberle failed to disclose to the investors, whom he solicited, the name of the insured and the status of the insured's health and who it is that has the responsibility of tracking the health status of the insured; who it is that made the prediction concerning the life expectancy of the insured, who it is that was charged with the responsibility for obtaining a death certificate upon the insured's demise, and who it is who was charged with the responsibility of filing the death benefits claim with the insurance company. It was, in fact, stated policy, that no specific information concerning the name or health status of a viator would be released either to the agent or to the investor, predicated on privacy concerns that may or may not apply in this situation. *To the best of my knowledge and belief* Charles Eberle never sought to uncover information concerning the name, health status, and life expectancy of the insureds whose viaticals, their clients had purchased and to the best of my knowledge and belief Charles Eberle never sought to determine whether federal privacy law applied to the agents who marketed a viator's viatical policy.

(Hale Affidavit)(emphasis added).

In addition, paragraphs 68, 69, 70, 71, 79, 80, and 81 are premised with the language "[t]o

the best of my knowledge and belief" on behalf of Hale.

It is axiomatic that affidavit evidence must be based upon personal knowledge. *See* 11

JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, § 56.14[1][c] (3d ed. 2005). Information

4

averred to the best of the affiant's knowledge or belief is insufficient to meet the requirements under Rule 56(e). *See Lopez-Carresquillo v Rubianes,* 230 F.3d 409, 414 (1st Cir. 2000); *Wyant v. Burlington Northern Santa Fe R.R.,* 210 F.Supp.2d 1263, 1272-73 (N.D. Ala 2002) (collecting cases).

In this case, the aforementioned paragraphs do not meet the personal knowledge requirement as they assume facts based upon beliefs. Accordingly, the Court disregards the statements contained in paragraphs 58, 61, 64, 65, 66, 67, 68, 69, 70, 71, 74, and to that extent, Defendant's motion to strike is granted.

## MOTION FOR SUMMARY JUDGMENT

*1. Standard under Fed. R. Civ. P. 56*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately,

this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

*2. Discussion*

The Plaintiff seeks summary judgment on all claims in the amended complaint. Initially, the Plaintiff seeks a ruling that the viatical settlements involved should be deemed securities. From that premise, the Plaintiff contends summary judgment is warranted as the Defendant was an agent who marketed unregistered securities in violation of securities' laws. Next, Plaintiff seeks liability arguing that there is no genuine issue of material fact regarding the asserted state law tort claims of unjust enrichment, conversion, breach of fiduciary duty, common law fraud, fraud in the inducement and negligent misrepresentation. The Court first addresses Plaintiff's initial argument.

### A. Viatical Settlements as Securities

In *S.E.C. v. Howey,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed.2d 1244 (1946), the Supreme Court defined the requirements of an investment contract necessary to place it within the definition of a security. There the respondent offered customers a land and service contract regarding its citrus acreage in Florida. The SEC brought suit to restrain respondents' use of mails and interstate commerce in offering and selling what it deemed unregistered securities. The Court noted how the Securities Act of 1933 defined the term "security", stating that its legal determination of this issue required consideration of all the circumstances and whether such contracts could be construed as investment contracts within the meaning of Section 2(1) of the Act. *Id.* at 296, 66 S.Ct. at 1102. The Court took notice of how the term "investment contract"

7

was commonplace in state blue sky laws in existence prior to the federal statute. In spite of the fact many states did not have statutes which defined the term "investment contract," the Court noted such contracts:

> had been broadly construed by state courts so as to afford the investing public a full measure of protection. Form was disregarded for substance and emphasis was placed upon economic reality. An investment contract thus came to mean a contract or scheme for 'the placing of capital or laying out of money in a way intended to secure income or profit from its employment.'

*Id.* at 298, 66 S.Ct. at 1102. In light of this history, the Court found Congress included this term with that knowledge, thereby finding it "reasonable to attach that meaning to the term as used by Congress, especially since such a definition [wa]s consistent with statutory aims." On this basis, the Court stated the requirements regarding an investment contract as a "contract, transaction or scheme whereby a person invests his money in a commonplace enterprise and is led to expect profits solely from the efforts of the promoter or third party." *Id.* at 299, 66 S.Ct. at 1103. The definition was characterized by the Court as "a flexible rather than a static principle, one that [wa]s capable of adaptation to meet the countless and various schemes devised by those [ ] seek[ing] use of the money of others on the promise of profits." *Id. Accord S.E.C. v. Edwards*, 540 U.S. 389, 124 S.Ct. 892, 157 L.Ed.2d 813 (2004).

Like the Supreme Court in *Howey*, the Sixth Circuit has taken a broad approach in determining what constitutes a security. *See Union Planters National Bank of Memphis v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174 (6th Cir.) *cert. denied,* 454 U.S. 1124 (1981). While recognizing that literal inclusion in the statutory definition is not a prerequisite, the Sixth Circuit has advocated a liberal approach:

> In interpreting the Securities Acts, the rules of statutory construction have been subordinated to the doctrine that courts will construe the provisions of a statute in a

8

> manner consistent with its dominant purpose and will carry out the generally expressed legislative policy by reading the text in light of the context.

*Id.* at 1180. In adopting this approach, the Circuit also noted that "the Supreme Court has disregarded form in favor of substance and counseled that application of the federal securities statutes turns on the 'economic realities' underlying a transaction." *Id.*, citing *United Housing Foundation, Inc. v. Forman,* 521 U.S. 847, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975).

With the binding precedent of the United States Supreme Court and the Sixth Circuit as a backdrop, the Court now turns to analyze whether a viatical settlement constitutes a security. As directed by the relevant precedent above, the analysis must begin with the statutory definition of a security:

> The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10).

Under the three-part test in *Howey*, the Court considers whether the investors here purchased with (1) an expectation of profits arising from (2) a common enterprise (3) dependent upon the efforts of others. The parties do not appear to dispute the first prong; therefore, for

9

purposes of this discussion that prong will be deemed satisfied and the Court will turn to the remaining factors.

The second prong of the test under *Howey* requires horizontal commonality.  *Hart v. Pulte Homes of Michigan Corp.,* 735 F.2d 1001, 1004 (6th Cir. 1984).  "Horizontal commonality requires sharing or pooling of funds in which fortunes of the individual investors are inextricably intertwined by contractual and financial arrangement."  *Cooper v. King,* 114 F.3d 1186, 1997 WL 243424 *2 (6th Cir. 1997)(unpublished), citing *Union Planters Nat'l Bank v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1183 (6th Cir. 1981).

In this instance, Alpha investors were often grouped with other investors and purportedly given a fractionalized interest in a particular policy.  It is this pooling of funds, along with "joint participation in the same investment enterprise," which satisfies the common enterprise requirement.  *Milnarik v. M-S Commodities, Inc.,* 457 F.2d 274, 276-77 (7th Cir.), *cert. den.,* 409 U.S. 887 (1972).  The agency agreement "purported" to assign the investor to a particular policy "with sole and specific rights," a representation made to secure the sale which never came to fruition in many, if not most, instances.  Moreover, the Supreme Court recently rejected an argument that an investment "scheme falls outside the definition because purchasers had a contractual entitlement to a return."  *S.E.C. v. Edwards,* 124 S.Ct. at 898.  Since the competent evidence establishes Alpha's practice of pooling its investors into policies, the horizontal commonality requirement under *Howey* is satisfied.

The Defendant advocates the absence of the third prong under *Howey*, thereby precluding a securities violation claim.  In support of his position the Defendant relies upon the case of *S.E.C. v. Lifetime Partners, Inc.,* 87 F.3d 536 (D.C. Cir. 1996), wherein the D.C. Circuit held that selling

viatical settlements was exempt from securities regulation. In a 2-1 decision, the court found that the investors' fractional interests were not securities "because the profits from their purchase d[id] not derive predominantly from the efforts of a party or parties other than the investors." *Id.* at 538. Specifically, the court found that post-purchase actions by the promoters were simply ministerial. Judge Wald's dissent, however, took issue with the majority's post-purchase activity, stating that by "[i]nsisting that some activity must occur after purchase but allowing any activity, no matter how trivial, to satisfy this requirement violates the principle that form should not be elevated over substance and economic reality."

In a subsequent decision denying a petition for a rehearing and a hearing en banc, the D.C. Circuit Court clarified its decision, finding that it did not adopt an "artificial bright-line rule" that an investment was not a security precluding consideration of pre-purchase efforts by promoters. *Life Partners* 102 F.3d 587, 588-589. Nevertheless, the Court went on to discount the pre-purchase efforts in that case, noting the dispositive factor relative to success was the date of the death of the viator, not a factor within the promoter's control.

Although the issue raised in *Lifetime Partners* has not had occasion to be addressed by the Sixth Circuit, this Court does not find the analysis by the D.C. Circuit to be persuasive. For example, in an analogous case involving rare coin portfolios, the district court in *S.E.C. v. Brigadoon Scotch Distributors, Ltd.,* 388 F.Supp. 1288 (S.D.N.Y. 1975) found the third prong under *Howey* satisfied where the fortunes of all investors were tied to the expertise of the promoter's efforts with the portfolios generally selected by the promoter's "experts," thereby establishing the investors' dependence on the expertise of the seller to produce the projected profit. As noted by the district court:

11

> Here the promoters are emphatically entrusted with the work and expertise of producing a pay off. For example, [the promoter] customarily, indeed in almost every case, 'selects the coins for investment purposes'[].

*Id.* at 1292.

A viatical investment program was also deemed to be a security as the district court held the *Howey* test to be satisfied in *S.E.C. v. Tyler*, Case No. 3:02-CV-0282-P, 2002 US Dist. LEXIS 2952 (N.D. Tex. 2002). There, the promoters enticed elderly investors by touting the investment's liquidity, a fixed interest rate, specific maturity date and maturity value at the outset of the investment. The promoter then took the investors' money and purchased fractional shares of viatical investments which had none of the attributes represented to the investor. In considering whether these investments constituted securities, the district court focused on the promoters representations to the investors in conjunction with the Supreme Court's directive in giving a broad definition to a security coupled with "Congress' purpose in enacting the securities laws [] to regulate *investments*, in whatever form they are made and by whatever name they are called." *Id.* at*18, quoting *Reves v. Ernst & Young,* 494 U.S. 45, 61 (1990) (emphasis in original).

While the decision in *Lifetime Partners* is characterized as having been largely unchallenged, it is perhaps a more accurate assessment to state that it has not altogether been embraced by other circuits and continues to generate much discussion in the academic realm[2].

---

2

*See e.g.,* Miriam R. Albert, The Future of Death Futures: Why Viatical Settlements Must Be Classified As Securities, 19 Pace L. Rev. 345 (1999); Timothy P. Davis, Should Viatical Settlements Be Considered "Securities" Under The 1933 Securities Act?, 6 Kan. J. L. & Pub. Pol'y 75 (1997); William L. Doerler, SEC v. Life Partners, Inc.: An Extended Interpretation Of The Howey Test Finds That Viatical Settlements Are Investment Contracts, 22 Del. J. Corp. L. 253 (1997); Elizabeth L. Deeley, Note, Viatical Settlements Are Not Securities: Is It Law Or Sympathy?, 66 Geo. Wash. L. Rev. 382 (1998); Dave Luxenberg, Comment, Why Viatical Settlements Constitute Investment Contracts Within The Meaning of the 1933 and 1934 Securities

(continued...)

Several state courts considering whether viatical settlements fall within their state securities laws have also undertaken discussion of the *Lifetime Partners* decision, choosing either to reject it or respectfully distinguish their particular circumstances.  For example, in *Siporin v. Carrington,* 200 Ariz. 97, 23 P.3d 92 (May 10, 2001), the Arizona appellate court acknowledged the decision in *Lifetime Partners* yet chose to distinguish its conclusion finding viatical settlements were securities since the policy set forth by the Arizona legislature required employing a broad definition of a security.  "What truly determines viatical settlement profitability is the realization, over time, of an outcome predicted by the seller through its analysis of the viator's life expectancy, the soundness of the insurer, the actions need to keep the policy in effect for the original face amount, and the insurer's unconditional liability under the policy's terms." *Id.* at 99, 97 P.3d at 104.

Building upon the decision in *Siporin,* the Colorado court of appeals also concluded that units of funds were securities where  investors were given certificates of investments by  a viatical investment company.  *Joseph v. Viatica Management, LLC,* 55 P.3d 264 (Aug. 1, 2002). Although the conduct of the investment company was post-investment, the Colorado court noted the investors relied entirely upon the company's investigation, analysis, selection of the viators and policies to be acquired, and negotiated terms of acquisitions.  The panel in *Joseph*  premised its holding, in part, upon the state securities act's underlying purpose and broad interpretation afforded thereto.

---

²(...continued)
Act, 34 Williamette L. Rev. 357 (1998); Andrew B. Wright, Comment, Idaho at Crossroads: Choices for Regulating Viatical Settlements, 29 Idaho L. Rev. 179 (2002).

An Indiana appellate court considering Liberte Capital Group investments held the viatical investments constituted securities. *Poyser v. Flora,* 780 N.E.2d 1191 (Jan. 10, 2003). The court in *Poyser* flatly rejected the analysis in *Lifetime Partners* despite finding the entrepreneurial activities of Liberte Capital occurred post-investment. The *Poyser* court noted its analysis was dependent upon "the economic realities of the transaction in light of Congressional intent." *Id.* at 1195. Although the Indiana legislature had recently amended its statutory framework to include viatical settlements within the definition of its state securities law, taking into account the guidance of the United State Supreme Court in *Forman* and *Howey* and finding the success of the enterprise rested with the purchaser, in the Liberte case such settlements were deemed securities under the Indiana Securities Act.

On the same date as *Poyser* was decided, the Michigan Court of Appeals also found viatical settlements to be securities. *Michelson v. Voison*, 254 Mich. App. 691, 658 N.W.2d 188 (Jan. 20, 2003). Like the other state appellate courts noted above, the court noted the viatical settlements had only recently been the object of legislation aimed at defining as securities viatical insurance contracts. The court in *Michelson* noted that interpretation of securities statues required consideration of the substance as well as looking beyond form, with close attention to be paid to the economic realities of the situation. In employing a broad interpretation to Michigan's securities law, the state administrative agency's position, and other states' legislation on this issue, the subject viatical investments were also deemed to be securities.

An Ohio appellate court affirmed a decision from the Ohio Division of Securities finding the sale of viatical settlement contracts were securities. *Rumbaugh v. Ohio Dept. of Commerce,* 155 Ohio App.3d 288, 800 N.E.2d 780 (Nov. 18, 2003). In its analysis the appellate court in

*Rumbaugh* presented a more extensive analysis and gave deference to the position of the Ohio Division of Securities. Examining the circumstances of that case under the *George* factors, the panel in *Rumbaugh* held that a viatical investment which predated the amendment to the Ohio securities law was, nevertheless, a security in the absence of statutory language to the contrary. Moreover, the *Rumbaugh* court recognized the broad treatment and application afforded to Ohio's Blue Sky Laws[3].

Therefore, in determining whether the Alpha viatical investment met the requirements under *Howey,* this Court is mindful of the Supreme Court's admonition in *Tcherepin v. Knight*, 389 U.S. 322 (1967), which advocated a more expansive approach to interpreting the term "securities." This Court believes such approach should be "flexible rather than a static principle" since it must be applied to all types of schemes aimed at investors. *Howey,* at 299, 66 S.Ct. at 1103. It applying the "efforts of others" prong, this Court is of the view that the promoter's selection of the vehicle, in this instance a viatical policy, is critical to the investor's expectation of profit. Once the investor agreed to purchase a viatical settlement, Alpha, like Liberte, would

---

[3]

The purpose underlying Ohio's Act that was enacted:

> to prevent those persons willing to market worthless or unnecessarily risky securities from soliciting the purchasing public without first subjecting themselves and their securities to reasonable licensing and registration requirements designed to protect the public from its own stupidity, gullibility and avericiousness.

*Perrysburg Township v. City of Rossford,* 149 Ohio App.3d 645, 652, 778 N.E.2d 619, 624 (2002). *See also In re Columbus Skyline Securities, Inc.,* 74 Ohio St.3d 495, 498, 660 N.E.2d 427, 429 (1996) (courts to give liberal construction to the Ohio Securities Act). Moreover, Ohio courts have recognized that inclusion of an instrument in the list of transactions constituting securities is not dispositive of the issue and requires determination "made on a case-by-case basis with the 'primary emphasis on the economic realities of the instrument.'" *Perrysburg Township v. City of Rossford.* at 653, 778 N.E.2d at 624-625. (Citations omitted.)

match the viatical settlement in an insurance policy maintained by Alpha. There is nothing to suggest the investor was involved or instrumental in the selection of the appropriate viatical policy, relying on the promise of the agent, broker or Alpha that their money would be in a matched policy. Thus, in this Court's view, it is not the date of the viator's death which establishes the success of the investment but the selection by the promoter of the policy into which the investor's money is placed, based upon its expertise in assessing the viator's life expectancy and other variables, which drives the success of the investment. It is this conduct which constitutes efforts of others under the broad construction advocated by the Supreme Court in *Howey*. Even under the analysis in *Lifetime Partners*, such post-purchase conduct would suffice to meet the factors under *Howey*. However, to limit consideration to pre-purchase conduct would, in the words of Judge Wald, "violate[] the principle that form should not be elevated over substance and economic reality." 87 F.3d at 551.

In the case *sub judice*, economic realities dictate against a narrow approach since there will always be opportunistic entrepreneurs who attempt to evade liability on those distinctions. In the end the investments offered by Alpha and peddled by its agent were an opportunity to "contribute or invest" money into a common enterprise and share profits derived, with the critical aspects of a successful investment riding on the "expertise" of Alpha. Keeping in mind the expansive approach employed in a securities analysis, the Court finds the viatical investments in this case constitute securities under the federal securities act. Accordingly, Plaintiff's motion for summary judgment is granted as to this issue.

B. Remaining Issues

As to the issue of liability, the Defendant contends he is not acquainted with all of the purported investors. He further disputes that he received the amount of commissions alleged as he did not sell the investors these viaticals. (Eberle Affid., ¶ 2 and 3.) Finally, the Defendant contends that the question of fraudulent intent cannot be determined as he purchased viaticals as an investment for himself which presents a determination for the trier of fact.

Even if the striken portions of the Hale affidavit were considered, the Court cannot grant judgment as a matter of law based upon the factual discrepancies. In considering a motion for summary judgment, the judge may not attempt to weigh the material evidence or determine its truth. *Anderson v. Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510. The judge's sole function will be to determine whether there is a genuine issue for trial such that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. (citations omitted). In this instance, the Defendant disputes that he sold viaticals to the Alpha investors–a position which cuts to the very heart of this litigation.

As the factual matters alleged and contested constitute genuine issues of material fact, those matters are issues for a jury. Accordingly, Plaintiff's motion for summary judgment on all claims is denied.

## CONCLUSION

For the reasons stated above, Defendant's motion to strike (Doc. No. 31) is granted. Plaintiff's motion for summary judgment (Doc. No. 29) is granted insofar as the viatical settlements are deemed to be securities, but the motion is denied as to liability on all claims therein. Finally, Plaintiff's motion for a ruling (Doc. No. 36) is denied as moot.

IT IS SO ORDERED.

17

                                                      s/ *David A. Katz*  
                                                      DAVID A. KATZ  
                                                      SENIOR U. S. DISTRICT JUDGE